UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61805-CIV-SINGHAL

JOANNA JIMENEZ,

    Plaintiff,

v.

VIACORD, LLC,

    Defendant.
_____/

## **OMNIBUS ORDER**

**THIS CAUSE** is before the Court on Defendant's Motion to Compel Arbitration Against Plaintiff, Joanna Jimenez's Claim (DE [7]) and Defendant's Motion to Dismiss (DE [8]). Plaintiff responded to both motions. *See* (DE [15]) and (DE [16]). Defendant filed replies. *See* (DE [20]) and (DE [21]). Accordingly, the matters are fully briefed and ripe for review.

**I.**    **BACKGROUND**

Plaintiff Joanna Jimenez ("Plaintiff") filed this action for negligence (Count I); intentional infliction of emotional distress (Count II); and breach of implied contract (Count III) in the Seventeenth Judicial Circuit in and for Broward County, Florida, on July 13, 2021, against Defendant ViaCord, LLC ("Defendant" or "ViaCord"). *See* (DE [1-1]). Following service of the Complaint (DE [1-1]), on August 26, 2021, ViaCord timely moved for removal of this action to federal court on the basis of diversity jurisdiction. *See* (DE [1]). ViaCord is in the field of cord blood banking and storing. Plaintiff alleges her husband, Roy Perez ("Plaintiff's husband"), executed a ViaCord Services Agreement (the

"Agreement") before the birth of their child, on September 9, 2020, for the collection of their child's cord blood and tissue (the "Sample"). (Compl. (DE [1-1]) at ¶ 20). The Agreement was not attached to the Complaint, notwithstanding the assertions in the Complaint.[1] *See id.* Plaintiff alleges she did not sign the Agreement and is thus not a party to it. *Id.* at ¶ 21.

On September 10, 2020, the day after birth of Plaintiff's child, doctors collected the Sample and it was picked up by a carrier for delivery to ViaCord's Facility. (Compl. (DE [1-1]) at ¶¶ 22–23). Plaintiff alleges the Sample should have arrived at ViaCord's facilities the following day (i.e., September 11, 2020) but was lost. *Id.* at ¶ 24. Plaintiff claims ViaCord must have been aware that the Sample was lost by September 11, 2020. *Id.* at ¶ 28. Plaintiff claims she was repeatedly reassured by ViaCord personnel that there was nothing to be concerned about, however, weeks had passed, and the Sample was missing. *Id.* at ¶¶ 28–32. Plaintiff claims ViaCord should have exercised greater care in collecting and storing the Sample because of its sensitive, lifesaving nature. *Id.* at ¶ 33. On October 18, 2020, ViaCord notified Plaintiff that the Sample was lost. *Id.* at 34.

## II.    LEGAL STANDARD

### A. Motion to Compel Arbitration

The primary purpose of the FAA is to "[ensure] that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989); *see also Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 53–54 (1995). There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Courts are to

---

[1] While not attached to the Complaint, the Viacord Services Agreement is found in the record as an attachment to one of the Motions at issue here. *See* (DE [7-1]).

2

construe "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Id.* at 126. According to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable," however, "arbitration is a matter of contract." 9 U.S.C. § 2; *Griggs v. Kenworth of Montgomery, Inc.*, 775 Fed. Appx. 608, 612 (11th Cir. 2019).

The presumption of arbitrability, however, "does not apply to the determination of whether an arbitration agreement exists." *Rensel v. Centra Tech, Inc.*, 2018 WL 4410110, *10 (S.D. Fla. June 14, 2018) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014)) (citations omitted). Accordingly, when determining whether an arbitration agreement exists, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Dasher*, 745 F.3d at 1116 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Such a determination rests on the intent of the parties." *Seaboard C. L. R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982) (citations omitted). "A party may not be required to arbitrate a dispute it did not agree to arbitrate." *Id.* (citations omitted).

"[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (holding that "summary judgment-like standard is appropriate" to decide the arbitration question) (quoting Fed. R. Civ. P. 56(a)). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Id.* at 1330 (quoting *Jackson v. Easters*, 379 S.E.2d 610, 611 (1989)). Likewise, the party moving to compel arbitration bears the burden of proving the contract is a valid and enforceable agreement. *Id.* (citation omitted).

3

### B. Motion to Dismiss

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

4

### III. **DISCUSSION**

#### A. **Motion to Compel Arbitration**

Defendant argues Plaintiff is required to arbitrate her claims as the "Legal Guardian"[2] and "Gestational Carrier"[3] of the child and as a "party" to the Agreement. Defendant further argues Plaintiff is bound to the terms of the Agreement as a non-signatory, claiming, in-part, that it is unequitable for Plaintiff to assert claims based on obligations arising from the Agreement while maintaining she is not bound by it. This Court agrees. Plaintiff, on the other hand, argues she cannot be bound to arbitrate her claims just because her husband signed the agreement as she is not his property, she is not specifically named in the Agreement, and she did not sign the Agreement. Both parties, however, fail to properly support their arguments with controlling law.

In this case, the laws of two states potentially apply: Florida, the state in which this case was brought and where Plaintiff resides, and Massachusetts, the state agreed to in the Agreement. *See* (Ex. A (DE [7-1]) at 4). "[U]nder Florida law, courts will enforce 'choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.'" *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms v. E. I. Dupont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)). The Agreement in question has a choice of law provision, which provides that the "Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." (Ex. A (DE [7-1]) at 4). Accordingly, if Defendant

---

[2] Defined by the Agreement as: "Legal Guardian means the person with legal authority to make binding legal decisions for the Child, including the Child, once the Child reaches the age of majority under applicable law. The Legal Guardian may change, with or without You or ViaCord knowing about the change." (Ex. A (DE [7-1]) at 1).
[3] Defined by the Agreement as: "Gestational Carrier means the person giving birth to the Child." *Id.*

5

seeks to enforce the arbitration clause, Defendant must cite to controlling law. Defendant did not. By the same token, if Plaintiff seeks to enforce an "implied" contract with ViaCord, Plaintiff must include reference to such contract and cite to controlling law.

In determining whether the claims at issue are subject to arbitration, this Court must first consider whether the parties agreed to submit their claims to arbitration. On balance, any point of ambiguity in the agreement should be resolved in favor of arbitration consistent with the "liberal federal policy favoring Arbitration Agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Notwithstanding such policy prerogatives, arbitration is "a matter of consent, not coercion." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989). Accordingly, a party ordinarily will not be compelled to arbitrate unless that party has entered into an agreement to do so. *See Nat'l Fed'n of the Blind v. Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018).

Next, there's an important distinction between arguments challenging the validity of an agreement and those challenging an agreement's formation. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). Here, there is no argument as to the validity of the Agreement, instead, the parties address only whether an enforceable contract was formed between Plaintiff and ViaCord. When deciding a motion to compel arbitration, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008); *see also Seifert v. United States Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) (citation omitted).

### 1. Whether the parties agreed to arbitrate

There is no dispute that an agreement to arbitrate exists in the Agreement. Rather, the parties disagree about whether the Agreement is binding on Plaintiff. Plaintiff contends the phrase "between the parties" means the agreement to arbitrate was only between the parties who signed the Agreement, Plaintiff's husband and ViaCord. Accordingly, Plaintiff argues ViaCord is attempting to force arbitration of a dispute between itself and a non-party. Although the Agreement refers to the "parties," Defendant argues the Agreement defines that term to include the Legal Guardian and Gestational Carrier, ergo Plaintiff, as a direct beneficiary of the Agreement. This Court agrees.

"[A]s a general proposition, a contract cannot bind a non-party." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9–10 (1st Cir. 2014); *see also Emplrs. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so."). However, "there are exceptions allowing non-signatories to compel arbitration" and "[a] non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract." *Grand Wireless, Inc.*, 748 F.3d at 9–10 (quoting *Rest. Pres. Masonry Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 62 n.2 (1st Cir. 2003); *see also World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008) (recognizing "common law principles of contract and agency law" which the First Circuit Court of Appeals has recognized, under certain contract and agency principles "non-signatories sometimes can be obligated by, or benefit from, agreements signed by others, and these principles can apply to arbitration provisions."); *McCarthy v. Azure*, 22 F.3d 351, 356 (1st Cir. 1994)

7

(citations omitted). Under Massachusetts law there are six theories for binding non-signatories to arbitration agreements: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel, and (6) third-party beneficiary." *Machado v. System4, LLC*, 471 Mass. 204, 209 (2015) (citing J.E. Grenig, Alternative Dispute Resolution § 7:4 (3d ed. 2005)); *see also* 21 R. Lord, Williston on Contracts § 57:19, p 183 (4th ed. 2001); *see also World Rentals & Sales, LLC*, 517 F.3d at 1244 (allowing a signatory to bind a non-signatory to an arbitration agreement under any of the following distinct theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel.").

Here, ViaCord argues Plaintiff is bound to the Agreement because her claims arise from the Agreement, she is incorporated by reference in the Agreement, and she is a third-party beneficiary of the Agreement. Plaintiff argues Defendant has not shown the limited distinct theories are applicable. This Court will address each applicable theory in turn.

Equitable estoppel "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). Federal courts generally "have been willing to estop a signatory from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* But courts have been reluctant to estop a non-signatory attempting to avoid arbitration. *Id.* at 145–46. Plaintiff is knowingly seeking to obtain benefits from the Agreement and seeking to enforce performance under the Agreement.

8

Accordingly, Plaintiff has embraced the Agreement despite her non-signatory status. *Id.* at 146.

"The third-party beneficiary doctrine, while similar in some ways to estoppel, is a distinct ground for compelling a non-signatory to arbitrate." *Ouadani v. TF Final Mile, LLC*, 876 F.3d 31, 39 (1st Cir. 2017). "While a court considering the application of equitable estoppel includes a focus on the parties' conduct after the execution of the contract, a court analyzing whether the third-party beneficiary doctrine applies looks to the parties' intentions at the time the contract was executed." *Id.* (citation omitted). "The 'critical fact' that determines whether a non-signatory is a third-party beneficiary is whether the underlying agreement 'manifest[s] an intent to confer specific legal rights upon [the non-signatory].'" *Id.* (quoting *InterGen N.V.*, 344 F.3d at 147). Here, Plaintiff and her husband share the same interests in using the Sample for the benefit of their child or related family members. *See* (Compl. (DE [1-1]) at ¶ 16) ("By banking a child's cord blood and cord tissue at birth, parents ensure the child will have a compatible source of stem cells for future therapeutic use, and also substantially increase the likelihood of locating compatible stem cells for use by related family members."). By the same token, Plaintiff and her husband suffer the same injury as a result of the loss of the Sample. *See* (Compl. (DE [1-1]) at ¶ 17) ("Collecting and storing a child's cord blood and cord tissue **is a once in a lifetime opportunity** and should be properly stored as soon as possible after birth.") (emphasis added).

### 2. Whether the dispute falls within the scope of the arbitration agreement

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

9

614, 630–31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). The question of arbitrability and whether the parties agreed to arbitrate is a decision for the court "unless the parties clearly and unmistakably provide otherwise." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). Here, the Agreement provides:

> **All questions, disputes or differences which may arise between the Parties to this Agreement shall**, if such questions, disputes, or differences cannot be amicably resolved by the Parties, **be referred to arbitration** to be held in Boston, Massachusetts in accordance with the Commercial Arbitration Rules of the American Arbitration Association, which rules are deemed to be incorporated by reference into this Section.

(Ex. A. (DE [7-1]) at 4) (emphasis added). Here, the language is unambiguous.

### B. Motion to Dismiss

Viacord also moves to dismiss Plaintiff's Complaint (DE [1-1]) for failure to state a claim. In sum, Defendant argues Plaintiff cannot maintain an independent tort claim because the conduct alleged arises from the terms of the Agreement; Plaintiff's intentional infliction of emotional distress lacks outrageous conduct; and Plaintiff's claim for implied breach of contract should be dismissed because an express contract exists, it fails to state a claim, and it constitutes an impermissible shotgun pleading. Plaintiff argues dismissal of her negligence claims is improper because she is permitted to plead in the alternative; the conduct alleged in the Complaint (DE [1-1]) is sufficiently outrageous to support her intentional infliction of emotional distress claim; and her implied breach of contract claim is not entirely derivative of her husband's rights under the Agreement and is properly pled to not constitute a shotgun pleading. Additionally, ViaCord argues Florida

10

law governs the substantive issues in this case and Plaintiff does not dispute such contention. Accordingly, this Court will apply Florida law.

### 1. Negligence

To state a claim for negligence under Florida law, a complaint must allege: (i) a legal duty on the defendant to protect the plaintiff from particular injuries; (ii) defendant's breach of that duty; (iii) plaintiff's injury being actually and proximately caused by that breach; and (iv) plaintiff suffering actual harm from the injury. *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1195 (Fla. 2003)). The determination of the existence of a duty is a matter of law and is not a factual question for the jury to decide. *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992). Plaintiff alleges "Viacord owed a duty to Plaintiff to exercise care in not merely transporting the Sample, but [also] ensuring that it arrived at its final destination at Viacord's facility." (Compl. (DE [1-1]) at ¶ 36).

While Defendant's argument that Plaintiff cannot maintain an independent tort claim may have merit, this Court finds Plaintiff has failed to state a claim. In the Complaint (DE [1-1]), Plaintiff has merely restated the elements for negligence, which is insufficient. *See generally* (Compl. (DE [1-1]) at ¶¶ 35–38). Pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555;

11

*see Iqbal*, 556 U.S. at 678 (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

### 2. Intentional infliction of emotional distress

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional distress, and (4) the emotional distress was severe." *Lincoln v. Fla. Gas Transmission Co., LLC*, 608 Fed. Appx. 721, 722 (11th Cir. 2015) (citation omitted). "To demonstrate that the defendant's infliction of mental suffering was deliberate or reckless, the plaintiff must show that the defendant's conduct was directed at the plaintiff." *Id.* (citations omitted). "To demonstrate that the defendant engaged in outrageous conduct, the plaintiff must show that the defendant's actions were 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278–79 (Fla. 1985) (adopting section 46 as the appropriate standard for intentional infliction of emotional distress claims) (quoting Restatement (Second) of Torts § 46 (1965)). Section 46 states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." Restatement (Second) of Torts § 46. In evaluating whether conduct reaches this level, the court must make an objective determination, and the subjective response of the person suffering emotional distress does not control. *Id.* at 722 (citation omitted).

Plaintiff alleges the delay in notifying her of the loss of the Sample and "repeated and intentional false statements and omission regarding the Sample after it was

12

transferred" is "outrageous" and far exceeds "all bounds of decency and is odious and utterly intolerable in a civilized society." (Compl. (DE [1-1]) at ¶¶ 41, 45). First, Plaintiff does not specify what statements were made, nor by who, or how such statements were made. Secondly, Plaintiff fails to specify how ViaCord conducted itself or how such conduct was specifically directed to her. Finally, Plaintiff does not specify the severity of the emotional distress, instead, Plaintiff merely claims she was "particularly susceptible to the above conduct as she was in a vulnerable physical and emotional state after the birth of her child." (Compl. (DE [1-1]) at ¶ 42). Despite the sensitive nature of the Sample, this Court finds Plaintiff has failed to state a claim for intentional infliction of emotional distress.

### 3. Breach of implied contract

Under Florida law, breach of an implied contract is analyzed the same as breach of an express contract. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). Accordingly, Plaintiff must allege: (1) the existence of a contract; (2) a material breach of the contract by the defendant; and (3) damages resulting from the defendant's breach of the contract. *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1332 (11th Cir. 2017). In the Complaint (DE [1-1]), Plaintiff alleges she entered into an implied contract (the "Cord Blood Banking Agreement") with CBR[4] on September 10, 2020, for the collection, shipment, processing, and storage of the Sample. (Compl. (DE [1-1]) at ¶ 55). "[O]n September 9, 2022, Plaintiff's husband executed **the attached ViaCord Services Agreement** . . . ." (Compl. (DE [1-1]) at ¶ 20) (emphasis added). Nonetheless, Plaintiff alleges her claims arise from an implied breach of contract because ViaCord must

---

[4] According to Defendant, CBR is a competitor. (Mot. (DE [8]) at 9 n.4). Plaintiff does not address this contention in her response.

13

have known Plaintiff would rely on claims made on Defendant's website and marketing materials. *Id.* at ¶ 49.

Furthermore, to the extent Plaintiff claims ViaCord's conduct was fraudulent, Plaintiff fails to meet the heightened pleading standard required by Federal Rule of Civil Procedure ("Rule") 9(b). Rule 9(b) contains a "heightened pleading standard:" A plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotations omitted). "[P]ursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)). "At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1216 (S.D. Fla. 2020) (citations omitted).

"When pleading fraud, the plaintiff generally should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud, and the place of the alleged fraud." *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1306 (S.D. Fla. 2000) (citing *Anthony Distribs. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1365 (M.D. Fla. 1995). "The plaintiff should also quote or paraphrase the alleged fraudulent misrepresentations made by the defendant." *Id.* (citation omitted). Plaintiff, however, has made no specific allegations identifying who made the alleged fraudulent statements, in

which documents or oral representations they were made, when or where the statements were made, or the contents of the statements. While Plaintiff does refer to Defendant's website and marketing materials as the basis for her detrimental reliance on purported promises, Plaintiff does not attach or identify such materials. *See* (Compl. (DE [1-1]) at ¶ 49). Moreover, Plaintiff merely pleads the words "fraudulent conduct," and pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## IV.     CONCLUSION

While this Court finds a valid agreement to arbitrate and such arbitration clause is express and unambiguous as set out in the terms of the Agreement, this Court finds Plaintiff's Complaint (DE [1-1]) fails to state a claim upon which relief can be granted. Plaintiff has failed to allege sufficient facts to support any cause of action asserted. Plaintiff cannot state a claim for negligence with boilerplate allegations nor can Plaintiff state a claim for intentional infliction of emotional distress with vague, conclusory allegations. Finally, Count III is an impermissible "shotgun" pleading because it seems to assert multiple causes of action in a single count. "[S]hotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)); *see also Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Strategic Income Fund, LLC*, 305 F.3d at 1295 n.9 ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at

great length and always with great dismay."); *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."). Accordingly, it is hereby

**ORDERED AND ADJUDGED as follows:**

1. Defendant's Motion to Compel Arbitration Against Plaintiff, Joanna Jimenez's Claim (DE [7]) is **GRANTED**.

2. Defendant's Motion to Dismiss (DE [8]) is **GRANTED**.

3. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

4. Furthermore, all deadlines are **TERMINATED**, and all hearings are **CANCELLED**.

5. Should Plaintiff choose to file a motion for leave to amend complaint, Plaintiff shall do so **by September 30, 2022**. Such filing would not, however, affect this Court's decision as to Defendant's Motion to Compel Arbitration (DE [7]).

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 14th day of September 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF